Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
611 Wilshire Blvd., Suite 808
Los Angeles, CA 90017
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOLOMON RUBIN,<br><br>               Plaintiff,<br><br>          vs.<br><br>ACTIVISION BLIZZARD, INC.,<br>REVETA BOWERS, ROBERT<br>CORTI, HENDRIK HARTONG III,<br>BRIAN KELLY, ROBERT KOTICK,<br>BARRY MEYER, ROBERT<br>MORGADO, PETER NOLAN,<br>DAWN OSTROFF, and CASEY<br>WASSERMAN,<br><br>               Defendants. | Case No.<br><br>**COMPLAINT FOR<br>VIOLATIONS OF THE<br>FEDERAL SECURITIES<br>LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Solomon Rubin ("Plaintiff"), on behalf of himself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to

- 1 -

Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

## NATURE OF THE ACTION

1. This is an action brought by Plaintiff against Activision Blizzard, Inc. ("Activision" or the "Company") and the members of Activision's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Activision will be acquired by Microsoft Corporation ("Microsoft") through Microsoft's subsidiary Anchorage Merger Sub Inc. ("Merger Sub") (the "Proposed Transaction").

2. On January 18, 2022, Activision and Microsoft issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated January 18, 2022 (the "Merger Agreement") to sell Activision to Microsoft.  Under the terms of the Merger Agreement, Activision stockholders will receive $95.00 in cash for each share of Activision common stock they own.  The Proposed Transaction is valued at approximately $68.7 billion.

3. On February 18, 2022, Activision filed a Schedule 14A Preliminary Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Activision stockholders vote in favor of the Proposed Transaction,

- 2 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

omits or misrepresents material information concerning, among other things: (i) Activision's financial forecasts; and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Allen & Company LLC ("Allen & Company"). Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In short, unless remedied, Activision's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting or appraisal decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6. The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

7. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company is headquartered in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## **THE PARTIES**

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Activision.

9. Defendant Activision is a Delaware corporation, with its principal executive offices located at 2701 Olympic Boulevard, Building B, Santa Monica, California 90404.  The Company develops and publishes interactive entertainment content and services.  Activision's common stock trades on the Nasdaq Global Select Market under the ticker symbol "ATVI."

10. Defendant Reveta Bowers ("Bowers") has been a director of the Company since 2018.

11. Defendant Robert Corti ("Corti") has been a director of the Company since 2003.

12. Defendant Hendrik Hartong III ("Hartong") has been a director of the Company since December 2015.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

13.    Defendant Brian Kelly ("Kelly") has been Chairman of the Board since 2013, and a director of the Company since July 1995.  Defendant Kelly also previously served as Co-Chairman of the Board from October 1998 until 2013.

14.    Defendant Robert Kotick ("Kotick") is founder of the Company and has been Chief Executive Officer ("CEO") and a director of the Company since February 1991.  Defendant Kotick previously served as the Company's Chairman from February 1991 until July 2008, and as its President from July 2008 until June 2017.

15.    Defendant Barry Meyer ("Meyer") has been a director of the Company since 2014.

16.    Defendant Robert Morgado ("Morgado") has been a director of the Company since 1997.

17.    Defendant Peter Nolan ("Nolan") has been a director of the Company since 2013, and was previously a director of the Company from 2003 to 2008.

18.    Defendant Dawn Ostroff ("Ostroff") has been a director of the Company since 2020.

19.    Defendant Casey Wasserman ("Wasserman") has been a director of the Company since 2015.

20.    Defendants identified in paragraphs 10-19 are referred to herein as the "Board" or the "Individual Defendants."

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**OTHER RELEVANT ENTITIES**

21.    Microsoft develops and supports a wide range of software, services, devices, and solutions that deliver new opportunities, greater convenience and enhanced value to people's lives.  Microsoft offers an array of services, including cloud-based solutions that provide customers with software, services, platforms and content.  Microsoft's products include operating systems, cross-device productivity applications, server applications, business solution applications, desktop and server management tools, software development tools, and games.  Microsoft also designs and sells devices, including PCs, tablets, gaming and entertainment consoles, other intelligent devices, and related accessories.

22.    Merger Sub is a Delaware corporation and a wholly owned subsidiary of Microsoft.

**SUBSTANTIVE ALLEGATIONS**

**Background of the Company**

23.    Activision develops and distributes content and services on video game consoles, personal computers and mobile devices.  The Company also operates esports leagues and offers digital advertising within some of its content.  It is a worldwide leader in the development, publishing and distribution of high-quality interactive entertainment content and services, as well as related media that deliver engaging entertainment experiences to the Company's network of connected players on a year-round basis.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

24.     Based upon its organizational structure, Activision conducts business through three reportable segments, each of which is a leading global developer and publisher of interactive entertainment content and services based primarily on the Company's internally developed intellectual properties: Activision Publishing, Inc. ("Activision Publishing"), Blizzard Entertainment, Inc. ("Blizzard") and King Digital Entertainment plc ("King").

25.     Activision Publishing delivers content through both paid-for and free-to-play offerings and primarily generates revenue from full-game and in-game sales, as well as by licensing software to third-party or related-party companies that distribute Activision products.  Activision Publishing's key product franchise is Call of Duty®, a first-person action franchise.  Activision Publishing also includes the activities of the Call of Duty League™, a global professional esports league with city-based teams.

26.     Blizzard delivers content through both paid-for and free-to-play offerings and primarily generates revenue from full-game and in-game sales, subscriptions and by licensing software to third-party or related-party companies that distribute Blizzard products.  Blizzard also maintains a proprietary online gaming service, Battle.net®, which facilitates digital distribution of Blizzard content and selected Activision content, online social connectivity and the creation of user-generated content. Blizzard's key product franchises include: Warcraft®, which includes World of Warcraft, a subscription-based massive multi-player online role-playing game, and Hearthstone®, an online collectible card game based in the Warcraft universe;

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Diablo®, an action role-playing franchise; and Overwatch®, a team-based first-person action franchise.  Blizzard also includes the activities of the Overwatch League™, a global professional esports league with city-based teams.

27.  King delivers content through free-to-play offerings and primarily generates revenue from in-game sales and in-game advertising on the mobile platform. King's key product franchise is Candy Crush™, a "match three" franchise.

28.  On February 3, 2022, Activision announced its fourth quarter and full year 2021 financial results.  Activision delivered record full-year GAAP results in 2021, growing GAAP revenue 9% year-over-year, GAAP operating profit 19% year-over-year and GAAP EPS 22% year-over-year.  For the year ended December 31, 2021, Activision's net revenues presented in accordance with GAAP were $8.80 billion, as compared with $8.09 billion for 2020.  For the quarter ended December 31, 2021, Activision's GAAP earnings per diluted share was $0.72, as compared with $0.65 for the fourth quarter of 2020.  Activision generated $2.41 billion in operating cash flow for the year ended December 31, 2021, as compared with $2.25 billion for 2020.

**The Proposed Transaction**

29.  On January 18, 2022, Activision and Microsoft issued a joint press release announcing the Proposed Transaction.  The press release states, in relevant part:

REDMOND, Wash. and SANTA MONICA, Calif., Jan. 18, 2022 -- With three billion people actively playing games today, and fueled by a new

- 8 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

generation steeped in the joys of interactive entertainment, gaming is now the largest and fastest-growing form of entertainment. Today, Microsoft Corp. (Nasdaq: MSFT) announced plans to acquire Activision Blizzard Inc. (Nasdaq: ATVI), a leader in game development and interactive entertainment content publisher. This acquisition will accelerate the growth in Microsoft's gaming business across mobile, PC, console and cloud and will provide building blocks for the metaverse.

Microsoft will acquire Activision Blizzard for $95.00 per share, in an all-cash transaction valued at $68.7 billion, inclusive of Activision Blizzard's net cash.  When the transaction closes, Microsoft will become the world's third-largest gaming company by revenue, behind Tencent and Sony.  The planned acquisition includes iconic franchises from the Activision, Blizzard and King studios like "Warcraft," "Diablo," "Overwatch," "Call of Duty" and "Candy Crush," in addition to global eSports activities through Major League Gaming.  The company has studios around the word with nearly 10,000 employees.

Bobby Kotick will continue to serve as CEO of Activision Blizzard, and he and his team will maintain their focus on driving efforts to further strengthen the company's culture and accelerate business growth.  Once

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

the deal closes, the Activision Blizzard business will report to Phil Spencer, CEO, Microsoft Gaming.

"Gaming is the most dynamic and exciting category in entertainment across all platforms today and will play a key role in the development of metaverse platforms," said Satya Nadella, chairman and CEO, Microsoft. "We're investing deeply in world-class content, community and the cloud to usher in a new era of gaming that puts players and creators first and makes gaming safe, inclusive and accessible to all."

"Players everywhere love Activision Blizzard games, and we believe the creative teams have their best work in front of them," said Phil Spencer, CEO, Microsoft Gaming. "Together we will build a future where people can play the games they want, virtually anywhere they want."

"For more than 30 years our incredibly talented teams have created some of the most successful games," said Bobby Kotick, CEO, Activision Blizzard. "The combination of Activision Blizzard's world-class talent and extraordinary franchises with Microsoft's technology, distribution, access to talent, ambitious vision and shared commitment to gaming and inclusion will help ensure our continued success in an increasingly competitive industry."

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Mobile is the largest segment in gaming, with nearly 95% of all players globally enjoying games on mobile.  Through great teams and great technology, Microsoft and Activision Blizzard will empower players to enjoy the most-immersive franchises, like "Halo" and "Warcraft," virtually anywhere they want.  And with games like "Candy Crush," Activision Blizzard´s mobile business represents a significant presence and opportunity for Microsoft in this fast-growing segment.

The acquisition also bolsters Microsoft's Game Pass portfolio with plans to launch Activision Blizzard games into Game Pass, which has reached a new milestone of over 25 million subscribers.  With Activision Blizzard's nearly 400 million monthly active players in 190 countries and three billion-dollar franchises, this acquisition will make Game Pass one of the most compelling and diverse lineups of gaming content in the industry.  Upon close, Microsoft will have 30 internal game development studios, along with additional publishing and esports production capabilities.

The transaction is subject to customary closing conditions and completion of regulatory review and Activision Blizzard's shareholder approval.  The deal is expected to close in fiscal year 2023 and will be accretive to non-

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

GAAP earnings per share upon close.  The transaction has been approved by the boards of directors of both Microsoft and Activision Blizzard.

**Advisors**

Goldman Sachs & Co. LLC is serving as financial advisor to Microsoft and Simpson Thacher & Bartlett LLP is serving as legal counsel.  Allen & Company LLC is acting as financial advisor to Activision Blizzard and Skadden, Arps, Slate, Meagher & Flom LLP is serving as legal counsel.

## Insiders' Interests in the Proposed Transaction

30.     Activision insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Activision.

31.     Notably, Activision insiders stand to reap substantial financial benefits for securing the deal with Microsoft.  The estimated aggregate amount of the Merger Consideration payable with respect to shares of Activision common stock, including vested stock options, held by Activision non-employee directors and executive officers, as a group, is approximately $709 million.  The estimated aggregate value of unvested equity awards held by Activision non-employee directors and executive officers that

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

would accelerate in connection with the merger and a subsequent qualifying termination is approximately $1 million for non-employee directors, and approximately $66 million for executive officers.

32.   Moreover, Microsoft has agreed that Activision may grant, and the Activision Compensation Committee has approved the grant of up to $50 million in the aggregate of, restricted share units ("RSUs") to certain members of senior management, including Activision executive officers.

33.   Further, in connection with the Proposed Transaction, Activision and Microsoft agreed that if certain Company workplace metrics are achieved, the Board may: (i) grant an annual equity award of RSUs to defendant Kotick with a grant date value of up to $22,000,000; and (ii) provide cash compensation to defendant Kotick with an annual base salary up to $875,000 and an annual cash bonus of up to 200% of his base salary.

34.   Additionally, if they are terminated in connection with the Proposed Transaction, Company insiders stand to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| Officer[1] | Cash ($)[2] | Equity ($)[3] | Perquisites/ Benefits ($)[4] | Total ($) |
|---|---|---|---|---|
| Robert A. Kotick | $14,369,130 | $        0 | $223,172 | $14,592,302 |
| Armin Zerza | $ 4,115,068 | $21,142,348 | $ 49,832 | $25,307,249 |
| Daniel Alegre | $ 5,529,452 | $23,497,869 | $ 49,832 | $29,077,153 |
| Brian Bulatao | $ 4,095,890 | $ 7,159,120 | $ 49,832 | $11,304,842 |
| Grant Dixton | $ 2,678,938 | $12,037,260 | $ 41,238 | $14,757,436 |
| Claudine Naughton[5] | $        0 | $ 2,080,120 | $        0 | $ 2,080,120 |

- 13 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**The Proxy Statement Contains Material Misstatements or Omissions**

35.     The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Activision's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

36.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Activision's financial forecasts; and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Allen & Company.

***Material Omissions Concerning Activision's Financial Forecasts***

37.     The Proxy Statement omits material information regarding Activision's financial forecasts.

38.     For example, with respect to Activision's "Long-Range Plan," Activision's management applied certain risk assessments and judgments to the franchise and business unit inputs in arriving at the "Long-Range Plan."  *See* Proxy Statement at 49.  Yet, the Proxy Statement fails to disclose and quantify the specific risk assessments and judgments to the franchise and business unit inputs in arriving at the "Long-Range Plan."

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

39.     Additionally, with respect to Activision's "Long-Range Plan" the Proxy Statement fails to disclose the line items underlying the Company's (i) revenue and (ii) Operating Income.

40.     The omission of this material information renders the statements in the "Financial Forecasts" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Allen & Company's Financial Analyses***

41.     The Proxy Statement omits material information regarding Allen & Company's financial analyses.

42.     The Proxy Statement describes Allen & Company's fairness opinion and the various valuation analyses it performed in support of its opinion.  However, the description of Allen & Company's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Activision's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Allen & Company's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

43.     With respect to Allen & Company's *Selected Public Companies Analysis* and *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the comparable companies and transactions observed by Allen & Company in the analyses, respectively.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

44.     With respect to Allen & Company's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) quantification of the terminal values for the Company; (ii) quantification of the inputs and assumptions underlying the discount rates ranging from 6.50 to 8.00%; and (iii) the implied terminal multiples resulting from the analysis.

45.     With respect to Allen & Company's Wall Street research analysts' analysis, the Proxy Statement fails to disclose (i) the individual price targets observed and (ii) the sources thereof.

46.     The omission of this material information renders the statements in the "Opinion of Activision Blizzard's Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

47.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Activision will be unable to make an informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

# CLAIMS FOR RELIEF

## COUNT I

### Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

48.     Plaintiff repeats all previous allegations as if set forth in full.

49.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

50.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.   It misrepresented and/or omitted material facts, including material information about Activision's financial forecasts and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Allen & Company.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

51.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

52.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

53.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act

54.     Plaintiff repeats all previous allegations as if set forth in full.

55.     The Individual Defendants acted as controlling persons of Activision within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Activision, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

56.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be

- 18 -

misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

57.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.   The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.   They were, thus, directly involved in the making of the Proxy Statement.

58.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.   The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

59.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

60.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.   By virtue of their positions as controlling persons, these defendants are liable

pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Activision's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Activision, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Activision stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

- 20 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Dated: February 28, 2022

**WEISSLAW LLP**
Joel E. Elkins

By: */s/ Joel E. Elkins*

Joel E. Elkins
611 Wilshire Blvd., Suite 808
Los Angeles, CA 90017
Telephone:  310/208-2800
Facsimile:  310/209-2348
        -and-
Richard A. Acocelli
305 Broadway, 7th Floor
New York, NY  10007
Telephone: 212/682-3025
Facsimile:  212/682-3010

*Attorneys for Plaintiff*

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS